LODGED

1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
4  Assistant United States Attorney
   Public Corruption & Civil Rights Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-8452
7       Facsimile: (213) 894-0141
        E-mail:   thomas.rybarczyk@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

2020 MAR 26 PM 2:42

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
BY:_____

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 20CR00165

13              Plaintiff,           PLEA AGREEMENT FOR DEFENDANT
                                     RICARDO PACHECO  (REDACTED)
14              v.
                                     UNDER SEAL
15  RICARDO PACHECO,

16              Defendant.

17

18      1.   This constitutes the plea agreement between RICARDO PACHECO

19  ("defendant") and the United States Attorney's Office for the Central

20  District of California ("the USAO") in connection with an

21  investigation of defendant's acceptance of bribes as a Councilmember

22  for the City of Baldwin Park. This agreement is limited to the USAO

23  and cannot bind any other federal, state, local, or foreign

24  prosecuting, enforcement, administrative, or regulatory authorities.

25                  DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27           a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the



1  Court, appear and plead guilty to a single count information in the
2  form attached to this agreement as Exhibit A or a substantially
3  similar form, which charges defendant with Bribery Concerning
4  Programs Receiving Federal Funds, in violation of 18 U.S.C.
5  § 666(a)(1)(B).

6          b.   Not contest facts agreed to in this agreement.

7          c.   Abide by all agreements regarding sentencing contained
8  in this agreement.

9          d.   Appear for all court appearances, surrender as ordered
10  for service of sentence, obey all conditions of any bond, and obey
11  any other ongoing court order in this matter.

12          e.   Not commit any crime; however, offenses that would be
13  excluded for sentencing purposes under United States Sentencing
14  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
15  within the scope of this agreement.

16          f.   Be truthful at all times with the United States
17  Probation and Pretrial Services Office and the Court.

18          g.   Pay the applicable special assessment at or before the
19  time of sentencing unless defendant has demonstrated a lack of
20  ability to pay such assessments.

21          h.   Agree to waive the protections of the Letter
22  Agreements defined below in paragraph 4.

23          i.   Resign immediately as a City of Baldwin Park
24  Councilmember and not seek elective or appointive office during the
25  duration of supervised release.

26          j.   Defendant further agrees:

27              i.   To forfeit all right, title, and interest in and
28  to any and all monies, properties, and/or assets of any kind, derived

2

1  from or acquired as a result of, or used to facilitate the commission

2  of, or involved in the illegal activity to which defendant is

3  pleading guilty, including but not limited to the following:

4        A.  $83,145.00 in U.S. currency, which consists

5  of $20,245.00 seized on December 13, 2018 from various locations

6  throughout defendant's home, including in a safe in defendant's

7  bedroom, and $62,900.00 seized on October 4, 2019 from defendant,

8  which defendant had buried in two different locations in his backyard

9  (the "Forfeitable Assets").

10       2.  To the Court's entry of an order of forfeiture at

11 or before sentencing with respect to the Forfeitable Assets and to

12 the forfeiture of the assets.

13       3.  To take whatever steps are necessary to pass to

14 the United States clear title to the Forfeitable Assets, including,

15 without limitation, the execution of a consent decree of forfeiture

16 and the completing of any other legal documents required for the

17 transfer of title to the United States.

18       4.  Not to contest any administrative forfeiture

19 proceedings or civil judicial proceedings commenced against the

20 Forfeitable Assets. If defendant submitted a claim and/or petition

21 for remission for all or part of the Forfeitable Assets on behalf of

22 himself or any other individual or entity, defendant shall and hereby

23 does withdraw any such claims or petitions, and further agrees to

24 waive any right he may have to seek remission or mitigation of the

25 forfeiture of the Forfeitable Assets.

26       5.  Not to assist any other individual in any effort

27 falsely to contest the forfeiture of the Forfeitable Assets.

28

3

1       6.   Not to claim that reasonable cause to seize the
2  Forfeitable Assets was lacking.
3       7.   To prevent the transfer, sale, destruction, or
4  loss of the Forfeitable Assets to the extent defendant has the
5  ability to do so.
6       8.   To fill out and deliver to the USAO a completed
7  financial statement listing defendant's assets on a form provided by
8  the USAO.
9       9.   That forfeiture of Forfeitable Assets shall not
10  be counted toward satisfaction of any special assessment, fine,
11  restitution, costs, or other penalty the Court may impose.
12       10.   To the entry of, as part of defendant's guilty
13  plea, a personal money judgment of forfeiture against defendant in
14  the amount of $219,755.00, which sum defendant admits was derived
15  from proceeds traceable to the violations described in the factual
16  basis of this plea agreement.  Defendant understands that the money
17  judgment of forfeiture is part of defendant's sentence, and is
18  separate from any fines or restitution that may be imposed by the
19  Court.
20       11.   With respect to any criminal forfeiture ordered
21  as a result of this plea agreement, defendant waives: (1) the
22  requirements of Federal Rules of Criminal Procedure 32.2 and 43(a)
23  regarding notice of the forfeiture in the charging instrument,
24  announcements of the forfeiture sentencing, and incorporation of the
25  forfeiture in the judgment; (2) all constitutional and statutory
26  challenges to the forfeiture (including by direct appeal, habeas
27  corpus or any other means); and (3) all constitutional, legal, and
28  equitable defenses to the forfeiture of the Forfeitable Assets and

1  entry of Money Judgment in any proceeding on any grounds including,
2  without limitation, that the forfeiture constitutes an excessive fine
3  or punishment.  Defendant acknowledges that the forfeiture of the
4  Forfeitable Assets and entry of the Money Judgment are part of the
5  sentence that may be imposed in this case and waives any failure by
6  the Court to advise defendant of this, pursuant to Federal Rule of
7  Criminal Procedure 11(b)(1)(J), at the time the Court accepts
8  defendant's guilty plea.

9      3.    Defendant further agrees to cooperate fully with the USAO,
10  the Federal Bureau of Investigation, and, as directed by the USAO,
11  any other federal, state, local, or foreign prosecuting, enforcement,
12  administrative, or regulatory authority.  This cooperation requires
13  defendant to:

14          a.    Respond truthfully and completely to all questions
15  that may be put to defendant, whether in interviews, before a grand
16  jury, or at any trial or other court proceeding.

17          b.    Attend all meetings, grand jury sessions, trials or
18  other proceedings at which defendant's presence is requested by the
19  USAO or compelled by subpoena or court order.

20          c.    Produce voluntarily all documents, records, or other
21  tangible evidence relating to matters about which the USAO, or its
22  designee, inquires.

23      4.    For purposes of this agreement: (1) "Cooperation
24  Information" shall mean any statements made, or documents, records,
25  tangible evidence, or other information provided, by defendant
26  pursuant to defendant's cooperation under this agreement or pursuant
27  to the letter agreements previously entered into by the parties dated
28  April 29, 2019, May 30, 2019, July 16, 2019, and September 5, 2019

5

1   (the "Letter Agreements") and in his meeting with the government on
2   January 27, 2020; and (2) "Plea Information" shall mean any
3   statements made by defendant, under oath, at the guilty plea hearing
4   and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

5.  The USAO agrees to:

    a.  Not contest facts agreed to in this agreement.

    b.  Abide by all agreements regarding sentencing contained in this agreement.

    c.  Recommend that the Court vary downward in total offense level by an additional two levels based on his agreement to waive the protections given to him in the Letter Agreements detailed above in paragraph 4.

    d.  At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

    e.  Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range provided that the offense level used by the Court to determine that range is 29 or higher and provided that the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

6.  The USAO further agrees:

1         a.   Not to offer as evidence in its case-in-chief in the

2 above-captioned case or any other criminal prosecution that may be

3 brought against defendant by the USAO, any Cooperation Information.

4 Defendant agrees, however, that the USAO may use both Cooperation

5 Information and Plea Information: (1) to obtain and pursue leads to

6 other evidence, which evidence may be used for any purpose, including

7 any criminal prosecution of defendant; (2) to cross-examine defendant

8 should defendant testify, or to rebut any evidence offered, or

9 argument or representation made, by defendant, defendant's counsel,

10 or a witness called by defendant in any trial, sentencing hearing, or

11 other court proceeding; (3) in any criminal prosecution of defendant

12 for false statement, obstruction of justice, or perjury; and (4) at

13 defendant's sentencing. Defendant understands that Cooperation

14 Information will be disclosed to the United States Probation and

15 Pretrial Services Office and the Court.

16         b.   In connection with defendant's sentencing, to bring to

17 the Court's attention the nature and extent of defendant's

18 cooperation.

19         c.   If the USAO determines, in its exclusive judgment,

20 that defendant has both complied with defendant's obligations under

21 paragraphs 2 and 3 above and provided substantial assistance to law

22 enforcement in the prosecution or investigation of another

23 ("substantial assistance"), to move the Court pursuant to U.S.S.G.

24 § 5K1.1 to fix an offense level and corresponding guideline range

25 below that otherwise dictated by the sentencing guidelines, and to

26 recommend a term of imprisonment within this reduced range.

27               **DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION**

28     7.   Defendant understands the following:

1          a.    Any knowingly false or misleading statement by

2 defendant will subject defendant to prosecution for false statement,

3 obstruction of justice, and perjury and will constitute a breach by

4 defendant of this agreement.

5          b.    Nothing in this agreement requires the USAO or any

6 other prosecuting, enforcement, administrative, or regulatory

7 authority to accept any cooperation or assistance that defendant may

8 offer, or to use it in any particular way.

9          c.    Defendant cannot withdraw defendant's guilty plea if

10 the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

11 reduced guideline range or if the USAO makes such a motion and the

12 Court does not grant it or if the Court grants such a USAO motion but

13 elects to sentence above the reduced range.

14          d.    At this time the USAO makes no agreement or

15 representation as to whether any cooperation that defendant has

16 provided or intends to provide constitutes or will constitute

17 substantial assistance. The decision whether defendant has provided

18 substantial assistance will rest solely within the exclusive judgment

19 of the USAO.

20          e.    The USAO's determination whether defendant has

21 provided substantial assistance will not depend in any way on whether

22 the government prevails at any trial or court hearing in which

23 defendant testifies or in which the government otherwise presents

24 information resulting from defendant's cooperation. That is, whether

25 any person is found guilty or not guilty will not affect what

26 benefit, if any, defendant receives in exchange for his truthful

27 testimony.

28

1

## NATURE OF THE OFFENSE

2      8.   Defendant understands that for defendant to be guilty of

3  the crime charged in the single-count information, that is, Bribery

4  Concerning Programs Receiving Federal Funds, in violation of Title

5  18, United States Code, Section 666(a)(1)(B); the following must be

6  true: (1) defendant was an agent of a state or local government, or

7  any agency of that government; (2) the City of Baldwin Park received,

8  in any one-year period, benefits in excess of $10,000 under a Federal

9  program involving a grant, contract, subsidy, loan, guarantee,

10  insurance, or other form of Federal assistance; (3) defendant

11  solicited, demanded, accepted, or agreed to accept anything of value

12  from another person; (4) defendant acted corruptly with the intent to

13  be influenced or rewarded in connection with the business,

14  transaction, or series of transactions of the City of Baldwin Park;

15  and (5) the value of the business to which the payment related was at

16  least $5,000.

17

## PENALTIES

18      9.   Defendant understands that the statutory maximum sentence

19  that the Court can impose for a violation of Title 18, United States

20  Code, Section 666(a)(1)(B), is: 10 years of imprisonment; a 3-year

21  period of supervised release; a fine of $250,000 or twice the gross

22  gain or gross loss resulting from the offense, whichever is greatest;

23  and a mandatory special assessment of $100.

24      10.  Defendant understands that supervised release is a period

25  of time following imprisonment during which defendant will be subject

26  to various restrictions and requirements.  Defendant understands that

27  if defendant violates one or more of the conditions of any supervised

28  release imposed, defendant may be returned to prison for all or part

1  of the term of supervised release authorized by statute for the
2  offense that resulted in the term of supervised release, which could
3  result in defendant serving a total term of imprisonment greater than
4  the statutory maximum stated above.

5      11.  Defendant understands that, by pleading guilty, defendant
6  may be giving up valuable government benefits and valuable civic
7  rights, such as the right to vote, the right to possess a firearm,
8  the right to hold office, and the right to serve on a jury.
9  Defendant understands that he is pleading guilty to a felony and that
10 it is a federal crime for a convicted felon to possess a firearm or
11 ammunition.  Defendant understands that the conviction in this case
12 may also subject defendant to various other collateral consequences,
13 including but not limited to revocation of probation, parole, or
14 supervised release in another case and suspension or revocation of a
15 professional license.  Defendant understands that unanticipated
16 collateral consequences will not serve as grounds to withdraw
17 defendant's guilty plea.

18     12.  Defendant and his counsel have discussed the fact that, and
19 defendant understands that, if defendant is not a United States
20 citizen, the conviction in this case makes it practically inevitable
21 and a virtual certainty that defendant will be removed or deported
22 from the United States.  Defendant may also be denied United States
23 citizenship and admission to the United States in the future.
24 Defendant understands that while there may be arguments that
25 defendant can raise in immigration proceedings to avoid or delay
26 removal, removal is presumptively mandatory and a virtual certainty
27 in this case.  Defendant further understands that removal and
28 immigration consequences are the subject of a separate proceeding and

1   that no one, including his attorney or the Court, can predict to an
2   absolute certainty the effect of his conviction on his immigration
3   status.  Defendant nevertheless affirms that he wants to plead guilty
4   regardless of any immigration consequences that his plea may entail,
5   even if the consequence is automatic removal from the United States.
6                              FACTUAL BASIS
7       13.   Defendant admits that defendant is, in fact, guilty of the
8   offense to which defendant is agreeing to plead guilty.  Defendant
9   and the USAO agree to the statement of facts set forth in Exhibit B
10  to this agreement, and agree that this statement of facts is
11  sufficient to support a plea of guilty to the charge described in
12  this agreement and to establish the Sentencing Guidelines factors set
13  forth in paragraph 15, but is not meant to be a complete recitation
14  of all facts relevant to the underlying criminal conduct or all facts
15  known to either party that relate to that conduct.
16                           SENTENCING FACTORS
17      14.   Defendant understands that in determining defendant's
18  sentence the Court is required to calculate the applicable Sentencing
19  Guidelines range and to consider that range, possible departures
20  under the Sentencing Guidelines, and the other sentencing factors set
21  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
22  Sentencing Guidelines are advisory only, that defendant cannot have
23  any expectation of receiving a sentence within the calculated
24  Sentencing Guidelines range, and that after considering the
25  Sentencing Guidelines and the other § 3553(a) factors, the Court will
26  be free to exercise its discretion to impose any sentence it finds
27  appropriate up to the maximum set by statute for the crime of
28  conviction.

1      15.   Defendant and the USAO agree to the following applicable

2 Sentencing Guidelines factors:

3     Base Offense Level:             14       [U.S.S.G. § 2C1.1(a)]

4     More than one bribe:           +2       [U.S.S.G. § 2C1.1(b)(1)]

5     Value of payment/benefit      +14      [U.S.S.G. § 2C1.1(b)(2)]
      exceeds $550,000:

6     Elected Public Official        +4       [U.S.S.G. § 2C1.1(b)(3)]

7

8 Defendant and the USAO reserve the right to argue that additional

9 specific offense characteristics, adjustments, and departures under

10 the Sentencing Guidelines are appropriate.

11      16.   Defendant understands that there is no agreement as to

12 defendant's criminal history or criminal history category.

13      17.   Defendant and the USAO reserve the right to argue for a

14 sentence outside the sentencing range established by the Sentencing

15 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

16 (a)(2), (a)(3), (a)(6), and (a)(7).

17                     WAIVER OF CONSTITUTIONAL RIGHTS

18      18.   Defendant understands that by pleading guilty, defendant

19 gives up the following rights:

20           a.   The right to persist in a plea of not guilty.

21           b.    The right to a speedy and public trial by jury.

22           c.    The right to be represented by counsel – and if

23 necessary have the Court appoint counsel – at trial.   Defendant

24 understands, however, that, defendant retains the right to be

25 represented by counsel – and if necessary have the Court appoint

26 counsel – at every other stage of the proceeding.

27

28

1      d.   The right to be presumed innocent and to have the

2 burden of proof placed on the government to prove defendant guilty

3 beyond a reasonable doubt.

4      e.   The right to confront and cross-examine witnesses

5 against defendant.

6      f.   The right to testify and to present evidence in

7 opposition to the charges, including the right to compel the

8 attendance of witnesses to testify.

9      g.   The right not to be compelled to testify, and, if

10 defendant chose not to testify or present evidence, to have that

11 choice not be used against defendant.

12      h.   Any and all rights to pursue any affirmative defenses,

13 Fourth Amendment or Fifth Amendment claims, and other pretrial

14 motions that have been filed or could be filed.

15                    WAIVER OF APPEAL OF CONVICTION

16      19.  Defendant understands that, with the exception of an appeal

17 based on a claim that defendant's guilty plea was involuntary, by

18 pleading guilty defendant is waiving and giving up any right to

19 appeal defendant's conviction on the offense to which defendant is

20 pleading guilty.  Defendant understands that this waiver includes,

21 but is not limited to, arguments that the statute to which defendant

22 is pleading guilty is unconstitutional, and any and all claims that

23 the statement of facts provided herein is insufficient to support

24 defendant's plea of guilty.

25              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26      20.  Defendant agrees that, provided the Court imposes a term of

27 imprisonment within or below the range corresponding to an offense

28 level of 29 and the criminal history category calculated by the

13

1  Court, defendant gives up the right to appeal all of the following:
2  (a) the procedures and calculations used to determine and impose any
3  portion of the sentence; (b) the term of imprisonment imposed by the
4  Court; (c) the fine imposed by the Court, provided it is within the
5  statutory maximum; (d) to the extent permitted by law, the
6  constitutionality or legality of defendant's sentence, provided it is
7  within the statutory maximum; (e) the term of probation or supervised
8  release imposed by the Court, provided it is within the statutory
9  maximum; and (f) any of the following conditions of probation or
10 supervised release imposed by the Court: the conditions set forth in
11 General Order 18-10 of this Court; the drug testing conditions
12 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and
13 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

14         21.   The USAO agrees that, provided all portions of the sentence
15 are at or below the statutory maximum specified above, the USAO gives
16 up its right to appeal any portion of the sentence.

17                    RESULT OF WITHDRAWAL OF GUILTY PLEA

18         22.   Defendant agrees that if, after entering a guilty plea
19 pursuant to this agreement, defendant seeks to withdraw and succeeds
20 in withdrawing defendant's guilty plea on any basis other than a
21 claim and finding that entry into this plea agreement was
22 involuntary, then (a) the USAO will be relieved of all of its
23 obligations under this agreement, including in particular its
24 obligations regarding the use of Cooperation Information; (b) in any
25 investigation, criminal prosecution, or civil, administrative, or
26 regulatory action, defendant agrees that any Cooperation Information
27 and any evidence derived from any Cooperation Information shall be
28 admissible against defendant, and defendant will not assert, and

                                   14

1   hereby waives and gives up, any claim under the United States
2   Constitution, any statute, or any federal rule, that any Cooperation
3   Information or any evidence derived from any Cooperation Information
4   should be suppressed or is inadmissible; and (c) should the USAO
5   choose to pursue any charge that was either dismissed or not filed as
6   a result of this agreement, then (i) any applicable statute of
7   limitations will be tolled between the date of defendant's signing of
8   this agreement and the filing commencing any such action; and
9   (ii) defendant waives and gives up all defenses based on the statute
10  of limitations, any claim of pre-indictment delay, or any speedy
11  trial claim with respect to any such action, except to the extent
12  that such defenses existed as of the date of defendant's signing this
13  agreement.

14                  EFFECTIVE DATE OF AGREEMENT

15      23.   This agreement is effective upon signature and execution of
16  all required certifications by defendant, defendant's counsel, and an
17  Assistant United States Attorney.

18                     BREACH OF AGREEMENT

19      24.   Defendant agrees that if defendant, at any time after the
20  signature of this agreement and execution of all required
21  certifications by defendant, defendant's counsel, and an Assistant
22  United States Attorney, knowingly violates or fails to perform any of
23  defendant's obligations under this agreement ("a breach"), the USAO
24  may declare this agreement breached.   For example, if defendant
25  knowingly, in an interview, before a grand jury, or at trial, falsely
26  accuses another person of criminal conduct or falsely minimizes
27  defendant's own role, or the role of another, in criminal conduct,
28  defendant will have breached this agreement.   All of defendant's

1   obligations are material, a single breach of this agreement is
2   sufficient for the USAO to declare a breach, and defendant shall not
3   be deemed to have cured a breach without the express agreement of the
4   USAO in writing.  If the USAO declares this agreement breached, and
5   the Court finds such a breach to have occurred, then:

6          a.   If defendant has previously entered a guilty plea
7   pursuant to this agreement, defendant will not be able to withdraw
8   the guilty plea.

9          b.   The USAO will be relieved of all its obligations under
10  this agreement; in particular, the USAO: (i) will no longer be bound
11  by any agreements concerning sentencing and will be free to seek any
12  sentence up to the statutory maximum for the crime to which defendant
13  has pleaded guilty; (ii) will no longer be bound by any agreements
14  regarding criminal prosecution, and will be free to criminally
15  prosecute defendant for any crime, including charges that the USAO
16  would otherwise have been obligated not to criminally prosecute
17  pursuant to this agreement; and (iii) will no longer be bound by any
18  agreement regarding the use of Cooperation Information and will be
19  free to use any Cooperation Information in any way in any
20  investigation, criminal prosecution, or civil, administrative, or
21  regulatory action.

22         c.   The USAO will be free to criminally prosecute
23  defendant for false statement, obstruction of justice, and perjury
24  based on any knowingly false or misleading statement by defendant.

25         d.   In any investigation, criminal prosecution, or civil,
26  administrative, or regulatory action: (i) defendant will not assert,
27  and hereby waives and gives up, any claim that any Cooperation
28  Information was obtained in violation of the Fifth Amendment

1 privilege against compelled self-incrimination; and (ii) defendant
2 agrees that any Cooperation Information and any Plea Information, as
3 well as any evidence derived from any Cooperation Information or any
4 Plea Information, shall be admissible against defendant, and
5 defendant will not assert, and hereby waives and gives up, any claim
6 under the United States Constitution, any statute, Rule 410 of the
7 Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
8 Criminal Procedure, or any other federal rule, that any Cooperation
9 Information, any Plea Information, or any evidence derived from any
10 Cooperation Information or any Plea Information should be suppressed
11 or is inadmissible.

12   25. Following the Court's finding of a knowing breach of this
13 agreement by defendant, should the USAO choose to pursue any charge
14 or any civil, administrative, or regulatory action that was either
15 dismissed or not filed as a result of this agreement, then:

16   a. Defendant agrees that any applicable statute of
17 limitations is tolled between the date of defendant's signing of this
18 agreement and the filing commencing any such action.

19   b. Defendant waives and gives up all defenses based on
20 the statute of limitations, any claim of pre-indictment delay, or any
21 speedy trial claim with respect to any such action, except to the
22 extent that such defenses existed as of the date of defendant's
23 signing this agreement.

24   COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

25   OFFICE NOT PARTIES

26   26. Defendant understands that the Court and the United States
27 Probation and Pretrial Services Office are not parties to this
28 agreement and need not accept any of the USAO's sentencing

17

1   recommendations or the parties' agreements to facts or sentencing
2   factors.

3       27.  Defendant understands that both defendant and the USAO are
4   free to: (a) supplement the facts by supplying relevant information
5   to the United States Probation and Pretrial Services Office and the
6   Court, (b) correct any and all factual misstatements relating to the
7   Court's Sentencing Guidelines calculations and determination of
8   sentence, and (c) argue on appeal and collateral review that the
9   Court's Sentencing Guidelines calculations and the sentence it
10  chooses to impose are not error, although each party agrees to
11  maintain its view that the sentencing calculations set forth above
12  are consistent with the facts of this case.  This paragraph permits
13  both the USAO and defendant to submit full and complete factual
14  information to the United States Probation Office and the Court, even
15  if that factual information may be viewed as inconsistent with the
16  Factual Basis or Sentencing Factors agreed to in this agreement.

17      28.  Defendant understands that even if the Court ignores any
18  sentencing recommendation, finds facts or reaches conclusions
19  different from those agreed to, and/or imposes any sentence up to the
20  maximum established by statute, defendant cannot, for that reason,
21  withdraw defendant's guilty plea, and defendant will remain bound to
22  fulfill all defendant's obligations under this agreement.  Defendant
23  understands that no one -- not the prosecutor, defendant's attorney,
24  or the Court -- can make a binding prediction or promise regarding
25  the sentence defendant will receive, except that it will be within
26  the statutory maximum.

27

28

18

## NO ADDITIONAL AGREEMENTS

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney


THOMAS F. RYBARCZYK                          March 26, 2020
Assistant United States Attorney              Date


RICARDO PACHECO                               3-16-2020
Defendant                                     Date


GLEN T. JONAS                                 3/16/20
Attorney for Defendant RICARDO                Date
PACHECO

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Ricardo Pacheco

_____        3 - 16 - 2020
RICARDO PACHECO                          Date
Defendant

20

## CERTIFICATION OF DEFENDANT'S ATTORNEY

1    I am RICARDO PACHECO's attorney. I have carefully and
2  thoroughly discussed every part of this agreement with my client.
3  Further, I have fully advised my client of his rights, of possible
4  pretrial motions that might be filed, of possible defenses that might
5  be asserted either prior to or at trial, of the sentencing factors
6  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
7  provisions, and of the consequences of entering into this agreement.
8  To my knowledge: no promises, inducements, or representations of any
9  kind have been made to my client other than those contained in this
10  agreement; no one has threatened or forced my client in any way to
11  enter into this agreement; my client's decision to enter into this
12  agreement is an informed and voluntary one; and the factual basis set
13  forth in this agreement is sufficient to support my client's entry of
14  a guilty plea pursuant to this agreement.

_____          3/16/20
GLEN T. JONAS                              Date
Attorney for Defendant RICARDO
PACHECO

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 666(a)(1)(B): Federal Program Bribery] |
| RICARDO PACHECO, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 666(a)(1)(B)]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   The City of Baldwin Park, California (the "City") was a local government located within Los Angeles County in the Central District of California.  The City received in excess of $10,000 under federal programs for both 2017 and 2018.

2.   The City was governed, in part, by its City Council, which adopted legislation, set policy, adjudicated issues, and established the budget for the City.

3.     The City Council was comprised of four City Council members and a Mayor, all of whom were elected at large by the City's registered voters.

4.     Defendant RICARDO PACHECO was first elected to the City Council in 1997 and currently holds that elected position.  He also previously served as the City's Mayor Pro-Tem.  As a result of his position as councilman, defendant was an agent of the City.

5.     Police Officer A was a City police officer and a member of the City's Police Association.  The Police Association was the union representing the City's police officers and engaged in negotiations with the City Council and City administrators.

6.     The City's contract with the City's Police Association was valued in excess of $5,000, namely, at least $4.4 million for a three-year period, and provided that the City would continue to employ the Police Association's members, namely, the unionized members of the City's Police Department, and provide for the creation of additional positions and pay increases for officers with certain education experience.

B.     THE BRIBERY

7.     Beginning in or about January 2018 and continuing to on or about October 17, 2018, in Los Angeles County, within the Central District of California, defendant PACHECO, an agent of the City of Baldwin Park, corruptly solicited, demanded, accepted, and agreed to accept things of value from Police Officer A, namely, $20,000 in cash and $17,900 in checks to a charity and political action committees over which defendant PACHECO exerted control, intending to be influenced and rewarded in connection with a business and a

///

2

1   transaction, and a series of transactions of the City of Baldwin

2   Park, having a value of $5,000 or more, specifically, the City's

3   contract with the City's Police Association.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                            FORFEITURE ALLEGATION

2                  [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offenses set forth in this Information.

9       2.   The defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11           (a)   All right, title and interest in any and all property,

12  real or personal, constituting, or derived from, any proceeds

13  traceable to any such offense; and

14           (b)   To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17      3.   Pursuant to Title 21, United States Code, Section 853(p), as

18  incorporated by Title 28, United States Code, Section 2461(c), the

19  defendant shall forfeit substitute property, up to the total value of

20  the property described in the preceding paragraph if, as the result

21  of any act or omission of the defendant, the property described in

22  the preceding paragraph, or any portion thereof: (a) cannot be

23  located upon the exercise of due diligence; (b) has been transferred,

24  sold to or deposited with a third party; (c) has been placed beyond

25  //

26  //

27

28

1   the jurisdiction of the court; (d) has been substantially diminished

2   in value; or (e) has been commingled with other property that cannot

3   be divided without difficulty.

4

5                                          A TRUE BILL

6

7                                          _____
                                           Foreperson
8   NICOLA T. HANNA
    United States Attorney
9

10

11  BRANDON D. FOX
    Assistant United States Attorney
12  Chief, Criminal Division

13  MACK E. JENKINS
    Assistant United States Attorney
14  Chief, Public Corruption and
       Civil Rights Section
15
    DANIEL J. O'BRIEN
16  Assistant United States Attorney
    Deputy Chief, Public Corruption
17     and Civil Rights Section

18  THOMAS F. RYBARCZYK
    Assistant United States Attorney
19  Public Corruption and Civil
       Rights Section
20

21

22

23

24

25

26

27

28

                                    5

# EXHIBIT B

## EXHIBIT B

### FACTUAL BASIS

The City of Baldwin Park, California (the "City") was a local government within Los Angeles County in the Central District of California. The City received in excess of $10,000 under federal programs for each of the calendar years 2017, 2018, and 2019.

The City was governed, in part, by its City Council, which adopted legislation, set policy, adjudicated issues, and established the budget of the City. The City Council was comprised of four City Council members and a Mayor, all of whom were elected by the City's voters.

The City's Police Association ("Police Association") was the union representing the City's police officers. The Police Association engaged in contract negotiations with the City Council and City administrators.

From 1997 to the present, defendant RICARDO PACHECO ("defendant") was a City Council member. From December 2017 through December 2018, defendant was the City's Mayor Pro-Tem. Defendant acted as an agent of the City in his capacity as a City Council member.

### The Police Association Scheme

Beginning in at least January 2018 and continuing through October 2018, defendant accepted $37,900 from Police Officer 1 ("PO-1"), a City police officer and Police Association member, in exchange for defendant's vote and support of the Police Association's contract with the City, a City contract valued in excess of $5,000. Specifically, the City's contract with the Police Association was valued at approximately $4.4 million over three years and called for the City to employ the Police Association's members, namely, the City Department's officers, and to provide for the creation of additional positions and pay raises for those officers with a certain level of education. In 2012, the City had considered disbanding its police department

1



and contracting directly with the Los Angeles County Sheriff's Department for police service for its City's residents.

In furtherance of this scheme, on January 24, 2018, defendant met with PO-1 in Baldwin Park and told PO-1 that he had several requests of the Police Association in exchange for his vote in favor of their contract.  Defendant asked that the Police Association purchase tickets for two $1,000 tables for two different fundraisers at defendant's Catholic Church.  Defendant also asked that the Police Association spend up to $75,000 for public service announcements that would demonstrate defendant's support for various causes, which were designed to assist defendant's political career.

On January 26, 2018, defendant met with PO-1 and another member of the Police Association in Baldwin Park.  During the meeting, PO-1 provided defendant a $900 check made payable to the Catholic Church for one of the church's fundraisers.  The memo line of the check read: "Donation for Ricardo Pacheco." Defendant indicated that he wanted $2,000 from the Police Association for the second fundraiser, which he said PO-1 could provide the following week.  Defendant told PO-1 that the Police Association would need to continue to provide up to $1,000 to his hand-picked "non-profits" or Political Actions Committees ("PACs") per quarter and financially and publicly support defendant's re-election.  PO-1 confirmed that defendant wanted $5,000 for public service announcements to assist defendant's political career by the following week.

On February 6, February 15, and February 28, 2018, at the direction of the Federal Bureau of Investigation ("FBI"), PO-1 met with and provided defendant with checks made payable to defendant's Catholic Church, as requested by defendant, totaling $7,000, in exchange for defendant's support for the Police Association contract.

After a March 7, 2018 City Council closed session, defendant sent a text message to PO-1 stating, "Contract was approved," in reference to the Police Association contract.  At a March 21, 2018 City Council session open to the public, the City Council voted on the Police Association contract with defendant voting to approve the contract.

On August 29, 2018, defendant sent an email to PO-1 in which he asked the PO-1 and the Police Association to donate $5,000 to

2



defendant's wife's campaign for the Valley County Water District.

On September 4, 2018, defendant asked PO-1 for $5,000 from the Police Association for defendant's wife's political campaign and $25,000 for defendant's personal benefit, namely, the PACs defendant controlled. After PO-1 told defendant that the Police Association did not want to be seen as supporting any one candidate in particular, defendant told PO-1 they could get around this concern by having PO-1 make checks payable to defendant's hand-selected PACs. Six days later, on September 10, 2018, defendant sent a text message to PO-1 listing two PACs to which he wanted PO-1 to donate: the California Education Coalition PAC ("CEC") and California Fire and Safety Committee PAC ("CFSC"). While California Fair Political Practices Commission filings did not list defendant as controlling either PAC, as discussed more fully below, both CEC and CFSC existed to promote defendant's interests, including defendant's preferred political candidates and for defendant's own personal benefit. Further, defendant had personal relationships with both individuals who, according to the California Fair Political Practices Commission, ran the PACs and helped set up those PACs for those individuals.

On September 26, 2018, in furtherance of defendant's agreement with PO-1 to vote in favor of the Police Association's contract, PO-1 met with defendant in Baldwin Park and provided defendant two $5,000 checks from the Police Association payable to CEC and CFSC. Prior to providing the checks to defendant, PO-1 asked where the PACs would spend the money. Defendant said that they would "be used for, to promote me basically." After seeing that there were only two checks for $5,000 each inside the envelope provided by PO-1, defendant said: "I thought it was going to be more than that." PO-1 told defendant that PO-1 would attempt to get the remaining money soon.

On October 2, 2018, defendant and PO-1 spoke on the telephone. During the call, defendant questioned PO-1 as to why the Police Association had not honored their part in the agreement with defendant. In doing so, defendant reiterated he had already performed his part of the bargain by voting for the Police Association contract. Specifically, defendant said: "Look, here's my concern, is, you know, you guys asked me a while back to support the contract . . . you know, and I did. I went through my commitment. And now you guys are saying, well,

3

before you do your commitment, you're asking for more, right, commitment." Later, defendant said: "The point is that when we make a commitment, you complete it. And I got you to the goal, and you guys haven't committed to what you're saying you'd do and it's like you're saying, 'well we don't trust you so we're gonna not do our commitment at this point…"'

On October 17, 2018, PO-1 met with defendant in a Baldwin Park, California coffee shop and provided defendant with an envelope containing $20,000 in cash to fulfill the Police Association's part of the bargain with defendant in return for his vote on the Police Association contract. After exiting the coffee shop, defendant approached PO-1 in PO-1's vehicle and told PO-1 that he had to have checks, not cash. PO-1 responded by explaining that providing checks under defendant's short timeframe would be difficult and that cash was the most efficient way to provide the money defendant demanded. Defendant responded by saying if PO-1 had provided checks, defendant would have had to find a way to conceal the true source of the checks by depositing them in the PACs' accounts in order to obtain the money for defendant's personal use. When PO-1 asked if defendant wanted PO-1 to try and get checks from the Police Association, defendant said: "No no, just leave it like that," and PO-1 and defendant parted ways.





5





6





7



8







11





13



14



# EXHIBIT C

**EXHIBIT C**

**LEGEND**

<u>PERSONS</u>



<u>ENTITIES</u>



